IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA : 

v. : CRIMINAL NO. 09-567

DERICK ANTONIO TAYLOR : 

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255

Derick Antonio Taylor filed a motion under 28 U.S.C. § 2255, seeking relief on the basis of the Supreme Court's recent decision in *United States v. Johnson,* 135 S. Ct. 2551 (2015). He asserts that, on the basis of *Johnson*, he was incorrectly sentenced under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). The question turns on whether third-degree murder, in violation of Pennsylvania law, qualifies as a "violent felony" under ACCA.

This question is a close one, a fact which may be seen as both surprising and distressing. That one may even ask whether murder is a violent felony is the product of the invalidation in *Johnson* of the "residual clause" which partly defined a violent felony, and of the required application of the categorical approach in assessing ACCA predicate felonies, a process that often leads to strange results dictated by the vagaries of myriad state statutes and prosecutorial practices.

Thus, notwithstanding the undisputable fact that Taylor shot and killed a man in 1993, and committed other violent and controlled substance offenses, it is debatable whether he was an "armed career criminal" when he illegally possessed a firearm in 2008. The answer will turn on whether third-degree murder is a violent felony under ACCA, a question made difficult by the fact that this offense may be committed recklessly under Pennsylvania law.

The answer to this question will be informed by a case currently pending before the Supreme Court, presenting the recklessness question. The government therefore recommends that this Court hold Taylor's petition in abeyance pending the resolution of that case. This action will not prejudice Taylor, as he is currently serving a state sentence and has not begun to serve his federal sentence, and he faces many years of federal custody regardless of the outcome of this motion.

* * *

On August 25, 2009, Taylor was charged by indictment with one count of possession of 50 grams or more of cocaine base ("crack") with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); one count of possession of 50 grams or more of cocaine base ("crack") with intent to distribute within 1,000 feet of a playground, in violation of 21 U.S.C. § 860(a); one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).

On March 2, 2010, following a several-day trial, the jury returned a verdict finding Taylor guilty on Count Four of the indictment, which charged him with possession of a firearm by a felon, and not guilty on the remaining counts. This Court sentenced Taylor on June 1, 2010. At sentencing, the Court found that Taylor was an Armed Career Criminal as set forth in 18 U.S.C. § 924(e), rejecting Taylor's argument that the evidence was insufficient to show that one of his prior convictions was for a serious drug offense. The Court sentenced Taylor to 200 months' imprisonment, five years' supervised release, and a special assessment of $100.

Taylor appealed, in No. 10-2600, arguing that the trial evidence was insufficient; that the district court erred in the Armed Career Criminal determination; and that the sentence was unreasonable. On September 16, 2011, the Third Circuit affirmed the judgment. *United States v. Taylor*, 444 F. App'x 613 (3d Cir. 2011).

Taylor now presents this 2255 motion challenging the Armed Career Criminal determination. He was sentenced under the ACCA based on three prior convictions for a violent felony and drug trafficking offenses. That application increased the statutory maximum sentence for the violation of 18 U.S.C. § 922(g) from 10 years to life, and increased the Sentencing Guidelines determination as

well. Under the Guidelines, the base offense level under § 2K2.1(a)(2) was 24,[1] increased by 2 because the gun in question was stolen, *see* § 2K2.1(b)(4)(A). Taylor was in criminal history category IV, and therefore the range would be 92-115 months. However, under § 4B1.4, the offense level for an Armed Career Criminal was 33, raising the range to 188-235 months. As noted, the Court imposed a sentence of 200 months.

ACCA status requires three previous convictions for a "violent felony" or "serious drug offense." *Johnson* does not affect the definition of a "serious drug offense." As for "violent felony," there are three "clauses" in the statute defining what type of prior crime qualifies. For each, the sentencing court must use the "categorical approach," looking at the statute that was the basis of the conviction, not the actual facts of the earlier crime. The ACCA's three clauses are:

1. The "elements" clause: "has as an element the use, attempted use, or threatened use of physical force against the person of another"

---

[1] This base offense level applies where the defendant, like Taylor, was previously convicted of "at least two felony convictions of either a crime of violence or a controlled substance offense." Those terms are defined in § 4B1.2. *See* § 2K2.1 app. note 1. As discussed later in this memorandum, it is presently debated whether Taylor had *three* prior convictions for a violent felony or a serious drug offense, as required for application of ACCA. There is no dispute that he had at least *two* such convictions for purposes of the Guidelines. In fact, while the status of Pennsylvania third-degree murder as an ACCA predicate is debatable, as discussed above, there is no such debate with regard to the definition of "crime of violence" in the Guidelines. Section 4B1.2 application note 1 specifically lists murder as falling within the definition, and in *United States v. Marrero*, 743 F.3d 389, 397-98 (3d Cir. 2014), the Third Circuit confirmed that Pennsylvania third-degree murder falls within the Guidelines term.

> 2. The "enumerated offenses" clause: "is burglary, arson, or extortion, [or] involves use of explosives"
>
> 3. The "residual" clause: "or otherwise involves conduct that presents a serious potential risk of physical injury to another"

*Johnson* invalidated the residual clause as impermissibly vague. The Supreme Court expressly added: "Today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." 135 S. Ct. at 2563.

There is no procedural bar to Taylor's motion for 2255 relief.[2] We agree that Taylor may present a motion under 28 U.S.C. § 2255, and obtain relief if in fact in light of *Johnson* he was not properly classified as an Armed Career Criminal. An ACCA error is cognizable under Section 2255 because it produces a sentence "in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). Further, as applied to ACCA, *Johnson* has substantive effect, and is therefore retroactively applicable. As a result of *Johnson*, a misapplication of ACCA causes a defendant to receive a sentence that the law could not validly impose – ACCA's 15-year mandatory minimum exceeds the otherwise applicable 10-year maximum, thus rendering *Johnson* substantive and retroactive. *See Schriro v. Summerlin*, 542 U.S. 348, 352 (2004).

---

[2] Taylor first filed a motion in the Third Circuit for permission to file a second or successive 2255 motion. The Court denied the motion as necessary, given that Taylor has not previously filed a 2255 motion.

Moreover, Taylor's motion is timely because it was presented within one year of the *Johnson* decision. The question, then, is simply whether the *Johnson* decision alters the conclusion in this case that Taylor was subject to ACCA.

Taylor was previously convicted in these pertinent state cases:

1. On July 31, 1991, under the name Derrell Travis, Taylor was convicted of possession of a controlled substance (five grams of cocaine) with intent to deliver ((Philadelphia docket CP-51-CR-0438421-1989).

2. On November 7, 1994, Taylor entered a guilty plea to criminal conspiracy to commit robbery, and criminal conspiracy to commit robbery of a motor vehicle (carjacking), felonies of the second degree, and was sentenced to 7½-23 months' incarceration, respectively and concurrently (Delaware County criminal transcript CP-23-CR-0001680-1994).

3. On February 12, 1996, under Philadelphia docket CP-51-CR-0527221-1994, Taylor was convicted of third-degree murder, a felony of the first degree, and was sentenced to 10-20 years' incarceration.

4. On March 11, 1996, Taylor was convicted of simple assault and recklessly endangering another person, misdemeanors of the second degree, and received a suspended sentence for both offenses (Philadelphia docket CP-51-CR-0800161-1995).

At sentencing in this case, Taylor conceded that the prior convictions for murder and robbery qualified as "violent felonies" for ACCA purposes, but disputed that his drug trafficking conviction qualified as a "serious drug offense" and provided the third predicate for ACCA status. This Court rejected that argument, as did the Third Circuit on appeal.

The question now is whether the ACCA determination is undermined by the decision in *Johnson* invalidating the residual clause.

1. *Johnson* did not address the definition of a "serious drug offense." The law of the case is binding that Taylor's 1991 narcotics conviction qualifies.

2. The 1994 conviction for conspiracy to commit robbery also qualifies, as it is a "violent felony" based on the elements clause, not the invalidated residual clause.

The Third Circuit has held that, because Pennsylvania law requires that the elements of the crime that was the object of a criminal conspiracy be defined for the jury, a Pennsylvania conviction for conspiracy to commit robbery necessarily encompasses the elements of robbery itself for purposes of the ACCA analysis. *United States v. Preston*, 910 F.2d 81, 86 (3d Cir. 1990). Thus, the question is whether the robbery that Taylor conspired to commit is a "violent felony" under the elements clause.

Taylor was convicted in the 1994 case of two counts, one of conspiracy to commit robbery, and one of conspiracy to commit robbery of a motor vehicle. The latter is not a violent felony under the elements clause, because the substantive offense, 18 Pa. C.S. § 3702(a) ("A person commits a felony of the first degree if he steals or takes a motor vehicle from another person in the presence of that person or any other person in lawful possession of the motor vehicle."), does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." However, the robbery which Taylor conspired to commit does qualify.

Application of ACCA to the Pennsylvania robbery statute can be challenging. The statute, 18 Pa. C.S. § 3701(a), as in effect at the time of Taylor's crimes, stated:

> (1) A person is guilty of robbery if, in the course of committing a theft, he:
>
> (i) inflicts serious bodily injury upon another;
>
> (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;
>
> (iii) commits or threatens immediately to commit any felony of the first or second degree;
>
> (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury; or
>
> (v) physically takes or removes property from the person of another by force however slight.

Prior to Taylor's conviction in this case, the Third Circuit held that any violation of Section 3701 is categorically a violent felony for purposes of ACCA, as any conviction "has as an element the use of force against the person of another." *United States v. Cornish*, 103 F.3d 302, 309-10 (3d Cir. 1997). In that case, Cornish was convicted pursuant to Section 3701(a)(1)(v).

That determination is no longer valid, in light of subsequent Supreme Court decisions. Most notably, in *Johnson v. United States*, 559 U.S. 133 (2010), the Court held that in applying the "elements" clause of ACCA (specifying an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another," § 924(e)(2)(B)(i)), "the phrase 'physical force' means *violent* force – that is, force capable of causing physical

pain or injury to another person." *Id.* at 140 (emphasis in original). Accordingly, the Supreme Court concluded that a Florida battery statute, that is satisfied by any intentional physical contact, "no matter how slight," does not qualify.

Examining the Pennsylvania robbery statute in light of *Johnson* (2010), it is clear that subsection (i) ("inflicts serious bodily injury upon another"), (ii) ("threatens another with or intentionally puts him in fear of immediate serious bodily injury"), and (iv) ("inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury"), all continue to qualify as ACCA violent felonies. Each "has as an element the use, attempted use, or threatened use of physical force against the person of another," in that each requires infliction or a threat of bodily injury. The infliction or threatened infliction of bodily injury involves "physical force," as the Court explicitly stated in *Johnson,* 559 U.S. at 140; *see also De Leon Castellanos v. Holder,* 652 F.3d 762, 766 (7th Cir. 2011) (a statutory requirement of any bodily injury comports with the *Johnson* requirement); *United States v. Horton*, 461 F. App'x 179, 184 (3d Cir. 2012) (not precedential) (same); *United States v. Anderson*, 695 F.3d 390, 401 (6th Cir. 2012) (statutory requirement of "physical harm" is enough).

At the same time, following *Johnson,* convictions under two subsections of Section 3701(a)(1) may not be violent felonies under ACCA: subsection (iii) ("commits or threatens immediately to commit any felony of the first or second

degree"), and (v) ("physically takes or removes property from the person of another by force however slight").³

In Taylor's case, the judicial documents answer the question. The charging document references: "PCC 903a1 Criminal Conspiracy to 3701 a1iiv Robbery (F1)." This refers to Section 3701(a)(1)(i) and 3701(a)(1)(iv). This interpretation is confirmed by the plea document, in which Taylor admitted to a second-degree felony. Under the statute in effect at the time of Taylor's crimes, "Robbery under subsection (a)(1)(iv) is a felony of the second degree; robbery under subsection (a)(1)(v) is a felony of the third degree; otherwise, it is a felony of the first degree." 18 Pa. C.S. § 3701(b). In other words, the only second-degree felony to which Taylor could have pled is conspiracy to commit robbery in violation of Section 3701(a)(1)(iv), and that offense ("inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury") is categorically a violent felony under the elements clause. Taylor's robbery conviction was thus properly considered as his second ACCA predicate.

3. Taylor also had a previous conviction for simple assault. It does not qualify because the charging document stated that the offense was committed intentionally, knowingly, or recklessly, and a simple assault committed recklessly

---

³ The Third Circuit held that § 3701 is "obviously" a divisible statute, meaning that each subsection may stand as a separate offense for purposes of categorical analysis. *See United States v. Blair*, 734 F.3d 218, 225 (3d Cir. 2013) (*citing Descamps v. United States,* 133 S. Ct. 2276 (2013)).

does not qualify as a violent felony. *United States v. Marrero*, 743 F.3d 389, 395 (3d Cir. 2014).

4. The issue thus turns on Taylor's 1996 conviction for third-degree murder, a felony of the first degree. If that offense is a violent felony under the elements clause, without reliance on the residual clause, it provides the third predicate for ACCA status.

This issue requires application of the categorical approach. In this approach, the court examines only the elements of the offense of conviction, and determines whether they satisfy the federal definition of a violent felony. When the statute's elements are "the same as, or narrower than" the federal definition, the prior conviction qualifies as an ACCA predicate. *Descamps v. United States,* 133 S. Ct. 2276, 2281 (2013). But if a statute "comprises multiple, alternative versions of the crime," *id.* at 2284, then a court may apply the "modified categorical approach" to determine which alternative formed the basis for the conviction. *Id.* at 2281. The modified categorical approach allows the sentencing court to "consult a limited class of documents, such as indictments and jury instructions," to determine which alternative in a divisible statute was the basis for a conviction. *See United States v. Blair*, 734 F.3d 218, 223-24 (3d Cir. 2013).[4]

---

[4] Thus, it is of no consequence that Taylor's crime was unquestionably violent. According to the presentence report:

> On March 6, 1994, Robert Phillips was leaving a laundromat near 53rd and Walnut Streets when a brown station wagon drove by. An individual in the
> *continued . . .*

Under Pennsylvania's general homicide statute, 18 Pa. C.S. § 2501(a), "[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." Section 2501(b) classifies homicides as either "murder, voluntary manslaughter, or involuntary manslaughter." Pennsylvania recognizes three types of murder:

> (a) Murder of the first degree—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.
>
> (b) Murder of the second degree—A criminal homicide constitutes murder of the second degree while defendant was engaged as a principal or an accomplice in the perpetration of a felony.
>
> (c) Murder of the third degree—All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.

*Id.* § 2502. In *United States v. Marrero,* 743 F.3d 389 (3d Cir. 2014), the Third Circuit explained as follows:

> Although the statute itself only defines third-degree murder as a catch-all without describing the elements of the offense, the Pennsylvania Superior Court has specified that third-degree murder is "an unlawful killing with malice but without specific intent to kill." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1219 (Pa. Super. Ct. 2011); *accord Commonwealth v. Tielsch*, 934 A.2d 81, 84 n. 3 (Pa. Super. Ct. 2007). And "malice" is defined as
>
>> "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a

---

car shot at Mr. Phillips several times and wounded him in the chest. Mr. Phillips was pronounced dead at Misericordia Hospital later the same day. Mr. Phillips' girlfriend was at the laundromat at the time of the shooting. According to the witness, before he died Mr. Phillips identified Taylor, known as "Wakil," as the man who shot him.

PSR ¶ 43.

> particular person may not be intended to be injured," [and] malice
> may be found where the defendant consciously disregarded an
> unjustifiable and extremely high risk that his actions might cause
> serious bodily injury.
>
> *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super.Ct.2001)
> (quoting *Commonwealth v. Cottam*, 420 Pa.Super. 311, 616 A.2d 988,
> 1004 (1992)); *see also Commonwealth v. Kling*, 731 A.2d 145, 148
> (Pa.Super.Ct.1999) ("A defendant must display a conscious disregard for
> almost certain death or injury such that it is tantamount to an actual desire
> to injure or kill; at the very least, the conduct must be such that one could
> reasonably anticipate death or serious bodily injury would likely and
> logically result.").

*Marrero*, 743 F.3d at 397-98.[5]

With the elimination of the residual clause, this murder offense may qualify as a violent felony under ACCA only under the elements clause ("has as an element the use, attempted use, or threatened use of physical force against the person of another"). The crime does involve the use of physical force. In *United States v. Mahone*, 662 F.3d 651, 656-57 (3d Cir. 2011), the Court explained that criminal homicide in violation of Pennsylvania law, at least when committed intentionally or knowingly, has as an element the use or attempted use of physical force against the person of another.[6] However, it is debatable that the

---

[5] *Marrero* went on to hold that third-degree murder qualifies as a career offender predicate, based on the enumeration of "murder" in § 4B1.2, application note 1, as such a predicate. The Court explained that the limitation on application of recklessness offenses does not apply in determining whether an offense categorically meets the definition of an enumerated offense. *Marrero*, 743 F.3d at 397-98. This ruling does not apply to ACCA, in which murder is not an enumerated crime.

[6] The particular holding in *Mahone* – that the offense of terroristic threats under Pennsylvania law for threatening to commit homicide is a "crime of
*continued . . .*

- 13 -

third-degree murder offense does not qualify because it may be committed recklessly.

The Third Circuit has not addressed this question with regard to ACCA and a Pennsylvania homicide offense. However, the Court has repeatedly held that provisions identical to the ACCA elements clause, for instance, in the "crime of violence" definition in 18 U.S.C. § 16(a), and in U.S.S.G. § 2L1.2, application note 1(B)(iii), apply only to intentional conduct, and not recklessness offenses. The Court has limited "categorical crimes of violence to offenses committed through intentional use of force against another rather than reckless or grossly negligent conduct." *United States v. Otero*, 502 F.3d 331, 335 (3d Cir. 2007). *See also, e.g., Singh v. Gonzales,* 432 F.3d 533, 539 (3d Cir. 2006); *Popal v. Gonzales,* 416 F.3d 249, 254–55 (3d Cir. 2005); *United States v. Parson,* 955 F.2d 858, 866 (3d Cir. 1992) ("Use of physical force is an intentional act, and therefore the first prong of [§ 16] requires specific intent to use force.").

In *Oyebanji v. Gonzales*, 418 F.3d 260, 261-62 (3d Cir. 2005) (Alito, J.), the Court held that the New Jersey offense of vehicular homicide, in violation of N.J. Stat. Ann. § 2C:11-5(b)(1), which may be committed recklessly, was not a

---

violence" under the career offender provision of the Guidelines – was overruled in *United States v. Brown,* 765 F.3d 185 (3d Cir. 2014). *Brown* explained that the subsection of the terroristic threats statute at issue applies to threats to commit offenses against property as well as to commit homicide or other crimes of violence, and is therefore categorically overbroad for purposes of the career offender (and likewise ACCA) analysis. But *Brown* did not disturb *Mahone*'s analysis of the nature of homicide under Pennsylvania law. *See Brown*, 765 F.3d at 192-93.

crime of violence under 18 U.S.C. § 16, and therefore not an aggravated felony under the immigration laws, 8 U.S.C. § 1101(a)(43)(F). The parties agreed that Section 16(a) ("an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another") did not apply, and debated the application of Section 16(b) ("any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"). The Court held that vehicular homicide did not qualify, because the "use" of "physical force" connotes intentional, not reckless conduct, and moreover suggested that this ruling applies to both subsections (a) and (b).

The Court relied on *Leocal v. Ashcroft*, 543 U.S. 1 (2004), which held that a crime of driving under the influence that may be committed negligently did not qualify under Section 16(b), reasoning that "[w]hile one may, in theory, actively employ something in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident." *Id.* at 9-10. *Leocal* reserved the question whether a recklessness offense suffices, and *Oyebanji* held that it does not:

> Although *Leocal* did not decide the question presented here, the *Leocal* opinion suggests that Oyebanji's crime was not a crime of violence as the Supreme Court understands that term. The cornerstone of the *Leocal* Court's reasoning was that the concept of the use of physical force against the person or property of another "requires active employment" and "naturally suggests a higher degree of intent than negligent or merely *accidental* conduct." *Leocal*, 125 S.Ct. at 382 (emphasis added). The Court noted that this concept is incorporated into both subsections (a) and (b) of 18 U.S.C. § 16.

*Oyebanji v. Gonzales*, 418 F.3d at 263. The Third Circuit continued:

> The quintessential violent crimes—murder, assault, battery, rape, etc.— involve the intentional use of actual or threatened force against another's person, and the term "accidental" is most often used to describe events that did not "occur [ ] as a result of anyone's purposeful act." *Black's Law Dictionary* 16 (8th ed.1999). Oyebanji's crime, although plainly regarded by New Jersey as involving a substantial degree of moral culpability, did not involve the intentional use of force but instead required only recklessness.

*Id.* at 264.

Nonetheless, the Court has not addressed the Pennsylvania homicide statute and the heightened mens rea of malice aforethought that it requires.

More recently, the Supreme Court again reserved the question. In *United States v. Castleman*, 134 S. Ct. 1405 (2014), the question was whether a particular battery offense qualified as a "misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9), which includes an offense involving "the use or attempted use of physical force," 18 U.S.C. § 921(a)(33)(A)(ii). In engaging in a categorical analysis focusing on the elements of the state statute at issue, the Court found it unnecessary to resolve whether recklessness would suffice, because the defendant was charged with committing the crime intentionally and knowingly. The Court observed that "the merely reckless causation of bodily injury under [the state statute] may not be a 'use' of force." *Castleman*, 134 S. Ct. at 1414. In a footnote, the Court stated, "Although *Leocal* reserved the question whether a reckless application of force could constitute a 'use' of force . . . the Courts of Appeals have almost uniformly held that recklessness is not sufficient."

*Id.* at 1414 n.8 (citing cases from ten Circuits, and noting that the First Circuit has reserved the issue).

This month, the Supreme Court granted certiorari to resolve the issue regarding a "misdemeanor crime of domestic violence." In *Voisine v. United States,* No. 14-10154, the Court will decide whether a misdemeanor crime with the mens rea of recklessness qualifies as a "misdemeanor crime of domestic violence," as defined by the elements clause in 18 U.S.C. §§ 921(a)(33)(A) and 922(g)(9).

In our case, the question is whether a murder offense committed with the heightened mens rea of malice aforethought, that is, "a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill," *Commonwealth v. Kling*, 731 A.2d 145, 148 (Pa. Super. Ct. 1999), categorically suffices as the use of physical force as stated in the ACCA elements clause. This question is not definitively answered by precedent. *Voisine* may be particularly informative on this issue, as the Maine statute at issue in that case also involves a heightened state of recklessness. *See United States v. Voisine,* 778 F.3d 176, 178 (1st Cir. 2015).

In this circumstance, the government submits that it would be prudent to hold Taylor's motion in abeyance pending the decision in *Voisine.*

This action does not prejudice Taylor. Although he was sentenced by this Court in 2010, since that time he continues to serve the "back time" for his state murder conviction. Taylor was sentenced in 1995 to 10-20 years' imprisonment

for the murder, and was released in 2005 after serving more than 10 years. Following his conviction in this case, he was remanded to state custody as a result of his parole violation. He thus has yet to serve any of the federal sentence, and will faces considerable additional time in custody whether his 200-month federal sentence stands, or he instead is entitled to resentencing with a guideline range of 92-115 months.

For these reasons, the government suggests that Taylor's motion should be held in abeyance.

              Respectfully yours,

              ZANE DAVID MEMEGER
              United States Attorney


              */s Robert A. Zauzmer*
              ROBERT A. ZAUZMER
              Assistant United States Attorney
              Chief of Appeals

# CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading has been served by first-class mail, postage prepaid, upon:

>Mr. Derick Antonio Taylor
>No. CY-2480
>SCI Dallas
>1000 Follies Road
>Dallas, PA  18612

>*/s Robert A. Zauzmer*
>ROBERT A. ZAUZMER
>Assistant United States Attorney

Dated:  November 16, 2015.